Estate of Micajah R. Reeves, also known as M. R. Reeves, John M. Reeves, Richard Early Reeves and Ernest R. Early, Executors v. Commissioner.
Estate of Micajah R. Reeves v. Commissioner
Docket No. 12883.
United States Tax Court
1949 Tax Ct. Memo LEXIS 280; 8 T.C.M. (CCH) 131; T.C.M. (RIA) 49035; January 31, 1949
Lee McCanliss, Esq., 31 Nassau St., New York, N. Y., John E. Higgiston, Jr., Esq., and Fred L. Van Dolsen, Esq., for the petitioner. Conway N. Kitchen, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $1,767,011.87 in estate tax. The parties have settled a number of their differences by a stipulation. The only issue for decision is whether the Commissioner erred in including the corpus of 23 trusts *281 in the gross estate. Findings of Fact The decedent, Micajah R. Reeves, was born in Siloam, North Carolina on July 10, 1877. He died on September 7, 1942 while residing in New York City. He was the second oldest of six brothers and a sister. He never married The Federal estate tax return for the estate of the decedent was filed with the collector of internal revenue for the second district of New York. The decedent was engaged in New York for many years in the sale of cotton goods. He and his brother John in 1922 organized a corporation known as Reeves Brothers, Inc. which succeeded to the business of a partnership formerly owned by them. The corporation has acted as a commission house and as a converter of cotton textiles. It has several manufacturing subsidiaries, the stock of which was owned by it and by the decedent. The decedent was president, treasurer and a director of the corporation from the date of its organization until his death. The outstanding capital stock of the corporation at all times material hereto consisted of 3,665 shares of 7 per cent cumulative preferred having a par value of $100 per share and 19,900 (later reduced to 19,753) shares of common having *282 a par value of $25 per share. Voting rights were vested in the common stock except that the preferred stock also had voting rights as long as the dividends thereon were in default for 18 consecutive months. The dividends on the preferred stock had been in default for a number of years until paid in full in June 1937. Thereafter they were not in default during the life of the decedent. The decedent owned 1,902 shares of the preferred stock and 15,345 shares of the common stock of Reeves Brothers, Inc. on August 21, 1935. His brother John owned 298 shares of the preferred and 2,681 shares of the common and his brother, Jeremiah B. Reeves, owned 5 shares of the preferred at that time. The remaining shares were held in relatively small blocks by about 33 stockholders. The decedent created 22 trusts on August 21, 1935 and one trust on January 2, 1940. He used a form which he had printed for that purpose. The only difference in the trusts is the name of the "beneficiary" and the amount of stock transferred to the trustees. The trustees named were the decedent, his brother John, and his nephew, Richard E. Reeves. Four of the original trusts were for his brothers, one was for his sister, *283 and one was for the widow of a deceased brother. The rest were for nephews and nieces. The trust created on January 2, 1940 was for a niece born in 1939. The decedent transferred 3,200 shares of common stock of Reeves Brothers, Inc. to the 22 trusts on August 21, 1935, 1,100 shares going to the trust for his brother John and 100 shares to each of the other trusts. He transferred 70 additional shares of the same stock to each of those trusts on December 30, 1936 and again on July 1, 1937. He transferred 60 of the same stock to each of the trusts on January 3, 1938, and again on January 3, 1939, plus 40 more to 6 of the trusts. He transferred a total of 195 shares on January 2, 1940 and 300 shares on January 2, 1941 to some of the trusts. The total number of shares of common stock of Reeves Brothers, Inc. transferred to the trusts from the time of their creation until the date of the death of the decedent was 9,655 shares. Also on December 30, 1936 he transferred 50 shares of Osage Manufacturing Company stock to each of three of the trusts. The trust for his brother John at the date of the death of the decedent contained 1,360 shares of common stock of Reeves Brothers, Inc. and 50 *284 shares of Osage Manufacturing Company stock. The petitioner then owned 484 preferred shares and 5,521 common shares of Reeves Brothers, Inc. stock. The next largest stockholders were his brother John with 2,591 common shares in his own name and Arthur M. Kerr with 1,095. Each trust Indenture consists of about five printed pages. It provides that the trustees are to pay the net income to the beneficiary during his life. The principal of each trust is to be paid over at the death of the beneficiary to his descendants, or in default of any descendant, to persons who would have been entitled by law had the beneficiary owned the property and died intestate in New York. The trustees are directed to retain the shares of Reeves Brothers, Inc. so long as the majority of the issued and outstanding shares is owned by the decedent, his estate, or any trusts created by him or while the majority of the stock is owned by his brother John, together with his nephews, and any trusts created by the decedent, unless a sale becomes necessary by reason of contingencies thereafter arising. The trustees are authorized to vote all stock held in trust. Paragraphs 3 and 5 of the Trust Indenture are as follows: *285 "3. Notwithstanding anything herein contained to the contrary, the Grantor shall have the right and power, which may be exercised from time to time during his life, as often as he may determine to alter or amend this Trust Indenture in any respect by an instrument in writing signed by him, except that he shall have no right to revoke the trust nor to alter or change any of the provisions hereof with respect to the disposition of principal and income, or either, nor to change the period of duration of the trust in any manner whatsoever, or the liability of the Trustees. "5. The trust hereby created may be terminated at any time upon the consent of the Trustees and the Beneficiary, said termination to be evidenced by an agreement in writing signed by the Trustees and the Beneficiary." There was no change in the trustees of the 23 trusts during the life of the decedent and there was no change either in the terms of the trusts or in the property held by the trustees except for the additions already mentioned. The decedent filed gift tax returns reporting the transfers of the Reeves Brothers, Inc. common stock to the trusts. The transfers to the 23 trusts "were not made by the *286 decedent in contemplation of death in so far as the condition of his health was concerned." The 9,655 shares of common stock of Reeves Brothers, Inc. and the 150 shares of Osage Manufacturing Company transferred by the decedent to the 23 trusts were worth $1,354,046 at the time of his death and represented almost one-half of his estate in value. No dividends were ever paid on the common stock of Reeves Brothers, Inc. prior to the date of the death of the decedent and no income was received by any of the 23 trusts prior to that time. No accounting has ever been made to any Court by the trustees of the 23 trusts. A dividend of $4 per share was paid on the common stock of Reeves Brothers, Inc. during the fiscal year ended June 30, 1943, after the death of the decedent, and a dividend of $2 per share was paid on that stock for the first one-half of the fiscal year ended June 30, 1944. The net earnings of Reeves Brothers, Inc. on its total issued and outstanding common stock, after giving effect to adjustments for taxes and renegotiation requirements and after making provision for the 7 per cent cumulative dividend on its preferred stock amounting to $25,655 annually, were as follows: *287 Per Share
Fiscal Year
Net Earnings
Net Earnings
Ended
on Common
on
June 30
Stock
Common Stock
1933
$ 46,668
$ 2.36
1934
71,555
3.62
1935
15,088
.76
1936
3,710
.19
1937
232,094
11.75
1938
Loss (729)
(.04)
1939
92,158
4.67
1940
156,529
7.92
1941
369,503
18.71
1942
372,883 *
18.88 *
A summary of the current assets and liabilities of Reeves Brothers, Inc. and its net working capital, for the fiscal years ended June 30, 1933 to June 30, 1942, inclusive, as shown by its books of account, is as follows: Fiscal
Year
Net
Ending
Current
Current
Working
June 30
Assets
Liabilities
Capital
1933
$ 431,435
$ 41,397
$ 390,038
1934
555,474
79,965
475,509
1935
415,911
52,558
363,353
1936
669,489
248,552
420,937
1937
962,547
468,576
493,971
1938
777,087
469,740
307,347
1939
959,187
565,093
394,094
1940
1,480,733
774,160
706,573
1941
3,518,229
2,361,148
1,157,081
1942
7,198,972
5,535,671
1,663,301
*288 The decedent made a number of gifts to assist his father, his brothers, his sister, his sister-in-law and his nephews and nieces during his lifetime which were not regarded by the Commissioner as transfers within section 811(c) or (d). The decedent's father died in 1923, at the age of 90. His older brother died in 1926. The decedent's last will and testament was executed on February 18, 1938 under which he left 25 per cent of his net estate to his brother John, 25 per cent to a niece, 15 per cent to his sister, 15 per cent to a nephew, and 10 per cent each to two other nephews. Each of those six persons was a beneficiary under one of the 23 trusts. The Commissioner in determining the deficiency held that the value of the property transferred to the 23 trusts was a part of the gross estate because the "transfers were made in contemplation of death and come within the provisions of section 811(c) of the Internal Revenue Code" and "as the decedent reserved the power to terminate the trusts, they are subject to inclusion in the gross estate under the provisions of Section 811(d) of the Internal Revenue Code." The transfers to the *289 23 trusts were made in contemplation of death within the meaning of section 811(c) of the Internal Revenue Code. The stipulations of the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner contends, consistently with his determination, that the transfers to the 23 trusts were a substitute for testamentary disposition of his property made by the decedent in contemplation of death within the meaning of section 811(c). The parties have stipulated that the transfers were not made in contemplation of death in so far as the condition of the health of the decedent was concerned. The trusts were created in 1935 when he was 58 years of age. Additional transfers were made during the next five and one-half years. The petitioner has the burden of proof to show that these transfers were not made in contemplation of death. Most of the facts were stipulated, but the petitioner also called four witnesses. Three of those witnesses gave some history of the decedent's life in order to show a close relationship between him and other members of the Reeves family. The fourth witness was George D. Smith, who described himself as the operating *290 head of Reeves Brothers, Inc., prior to his retirement on January 15, 1948, and who said he was the "confidential man" of the decedent during the period in which the transfers were made. The decedent's brother John also indicated on the stand that he was familiar with the creation of the trusts and the making of the transfers. Nevertheless they were not asked and the record fails to show just why the decedent created these 23 trusts, 22 of them on August 21, 1935, and the other one on January 2, 1940, why he chose to transfer to those trusts common stock of Reeves Brothers, Inc. which had never paid any dividends, or why no dividends were ever paid on the stock up to the date of the decedent's death. The petitioner says in its brief that one may not suppose that a person 58 years of age, in good health and active in business, as was the decedent, could have intended, when he made the transfers, that the trusts would receive no income and would be completely inactive until his death. A question like that must be decided upon evidence rather than inference, and the question is whether the petitioner has offered sufficient evidence to show that the determination of the Commissioner was *291 in error. It would appear that the decedent was the dominating person in the corporation during his life. His stockholdings decreased as he made transfers to the trusts and a time came when the shares held by him were less than 50 per cent of the voting shares. However, the evidence does not show that he lost control of the corporation at any time prior to his death but indicates, on the contrary, that he remained in control. There were substantial earnings on the stock. The record fails to show any reason why dividends could not have been paid on the common stock beginning at least in 1937. Almost immediately after his death the corporation began to pay dividends on the common stock. The three witnesses testified that the decedent frequently aided members of his family, paying their expenses, helping some to start in business and contributing toward the education of others, but that attitude and disposition on the part of the decedent is of little aid in so far as the contemplation of death issue is concerned. The unexplained creation of the inactive trusts was in sharp contrast to his actions on other occasions. The trusts did not help any of the beneficiaries during his life. *292 It is not at all apparent how such trusts were connected with life rather than with death. The decedent may, for all that appears, have intended that the trusts would remain inactive and no income would be received by them so long as he lived. They could thus serve as a substitute for testamentary disposition of a large part of his property to persons who were the natural objects of his bounty. The evidence as a whole does not refute the Commissioner's determination that the transfers were a substitute for testamentary disposition and in contemplation of death, but on the contrary lends considerable support to that determination. Since the petitioner has failed to show that the transfers were not made in contemplation of death as determined by the Commissioner, it is not necessary to consider the other issues argued by the parties. Decision will be entered under Rule 50. Footnotes
*. The 1942 net earnings on common stock would have amounted to $622,883, or $31.53 per share, if $250,000 had not been credited to a reserve for contingencies on the books for that year.↩